IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MISAEL QUINTANA,<br><br>   Petitioner,<br><br> v.<br><br>CONNIE GIPSON, Warden,<br><br>   Respondent. | No. C 13-5819 CRB<br><br>**MEMORANDUM AND ORDER DENYING PETITION FOR HABEAS CORPUS** |

  Following a jury trial in California state court, Petitioner Misael Quintana was convicted on December 14, 2005 of four counts of lewd and lascivious act on a child by duress (Cal. Penal Code § 288(b)(1)) and one count of aggravated sexual assault of a child under fourteen (Cal. Penal Code § 269). Ex. 1 (dkt. 7-2) at 213. Petitioner failed to appear at trial. Ex. 1 (dkt. 7-1) at 89-93. On September 1, 2006, the trial court sentenced Petitioner, in absentia, to fifteen years to life plus twenty-four years in state prison. Ex. 1 (dkt. 7-2) at 250-52. Petitioner now petitions for a writ of habeas corpus, arguing that he was deprived of his constitutional right to due process because there was insufficient evidence of duress, and that he received ineffective assistance of counsel. The petition is denied because the state court decisions rejecting Petitioner's claims were neither contrary to clearly established Federal law nor based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d).

## I. BACKGROUND

The facts of this case were summarized by the California Court of Appeal in People v. Quintana, No. H030825, 2011 WL 2453474 (Cal. Ct. App. June 21, 2011) as follows.

Petitioner was thirty years old and separated from his wife. Ex. 14 (dkt. 8-2) at 1-2. Their five-or-six-year-old daughter spent every other weekend with Petitioner. Id. At some point in early 2005, the daughter told her mother that Petitioner had undressed her and kissed her on her mouth, vagina, and "butt." Id. At first, the daughter did not want to tell her mother because she believed that her mother would hit her. Id. When the mother confronted Petitioner on the telephone, Petitioner told her not to report him and asked her to give him a chance. Id. He added that the daughter had "told him to do it." Id.

The daughter testified that Petitioner kissed her many times in his bed on her mouth, vagina, and "butt." Id. When Petitioner did so, he would tell her "[t]o be quiet" so that her uncle, who also lived in the house, would not come. Id. Petitioner also told the daughter "[n]ot to tell [the mother] that he had kissed [the daughter] in the car" "[s]o that [the mother] would not find out." Id. The daughter also testified that she kissed Petitioner's penis. Id. The daughter added that she loved Petitioner, was sad about not seeing him, and wanted to see him. Id. The daughter also related that Petitioner had once told her to put her mouth on his girlfriend's breast. Id.

On October 13, 2005, the Santa Clara County District Attorney charged Petitioner with one count of aggravated sexual assault of a child under fourteen (Cal. Penal Code § 269) and four counts of lewd and lascivious act on a child by duress (Cal. Penal Code § 288(b)(1)). Ex. 1 at 70-73. After the jury was selected and sworn, Petitioner fled California to his home town in Mexico. Quintana Decl. Ex. 9 (dkt. 8-1) at 1. The trial continued in his absence. Ex. 1 at 90. At the conclusion of trial on December 14, 2005 trial, the jury found Petitioner guilty of all five counts. Ex. 1 at 213. On September 1, 2006, the trial court sentenced Petitioner in absentia to fifteen years to life plus twenty-four years in state prison. Ex. 1 at 250-52.

United States District Court
For the Northern District of California

Petitioner appealed his conviction, but the California Court of Appeal granted the state's motion to dismiss on June 16, 2008.  Ex. 6 (dkt. 8-1).  The California Supreme Court denied review on October 2, 2008.  Exs. 7 & 8 (dkt. 8-1).

On June 26, 2007, Mexican authorities took Petitioner into custody.  Quintana Decl. Ex. 9 at 1-2.  Petitioner resisted extradition proceedings for two years.  Id.  When Petitioner returned to the United States in 2009, the trial court ordered him to serve the previously imposed sentence.  Ex. 9 at Ex. I.

On January 7, 2011, the California Court of Appeal granted Petitioner's motion to recall the remittitur and reinstated the appeal.  Ex. 10 (dkt. 8-2).

On June 21, 2011, the California Court of Appeal affirmed the trial court's judgment in an unpublished opinion.  Ex. 14 (dkt. 8-2), Quintana, 2011 WL 2453474 at *5.  The California Supreme Court denied review on September 14, 2011.  Ex. 16 (dkt. 8-2).

Between November 2011 and July 2013, Petitioner filed petitions for a writ of habeas corpus in the Santa Clara County Superior Court, the California Court of Appeal, and the California Supreme Court, all of which were denied.  Exs. 17-23 (dkts. 8-3, 8-4, 8-5, 8-6).

Having exhausted his potential remedies in state court, Petitioner filed this federal habeas petition on December 16, 2013, alleging: (1) insufficient evidence of duress; (2) ineffective assistance of counsel for failure to present Stoll evidence; (3) ineffective assistance of counsel for failure to present certain defense witnesses; (4) ineffective assistance of counsel for failure to conduct a polygraph test; and (5) cumulative prejudice.

## II.   STANDARD OF REVIEW

This Court may entertain a petition for a writ of habeas corpus "on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Because Petitioner filed his federal habeas petition after the effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), its provisions apply to his case.  See Fuller v. Roe, 182 F.3d 699, 702 (9th Cir. 1999) (per curiam).

3

AEDPA sets a high bar to habeas relief in federal court. Harrington v. Richter, 131 S.Ct. 770, 786 (2011). A federal judge may grant habeas relief to a state prisoner in only two scenarios: (1) when the petitioner can show that the State court unreasonably applied clearly established federal law, or (2) when the petitioner can show that the State court decision was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).

State courts are presumed to know and follow the law. See, e.g., Parker v. Duggar, 498 U.S. 308, 314-316 (1991); Walton v. Arizona, 497 U.S. 639, 653 (1990) (overruled on other grounds). In line with this presumption, a federal court on habeas review must employ a "highly deferential" standard of review that gives state court decisions the benefit of the doubt. Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (per curiam). To do any differently would compromise the states' power to punish offenders and the function of habeas corpus as a "guard against extreme malfunctions in the criminal justice system." Jackson v. Virginia, 443 U.S. 307, 332 n.5 (1979). Where, as here, a federal court reviews a state court's factual determinations, a "twice-deferential" standard applies because the role of the fact finder as weigher of the evidence must be preserved. See Parker v. Matthews, 132 S.Ct. 2148, 2152 (2012) (per curiam).

The first layer of deference requires a federal court to deny relief if, viewing the evidence in the light most favorable to the prosecution, there was evidence on which "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. (quoting Jackson, 443 U.S. at 324). This highly deferential standard preserves the role of the jury as factfinder by prohibiting a federal court from weighing the evidence, drawing conclusions, or determining the credibility of witnesses. Jackson, 443 U.S. at 319.

The second layer of deference requires a federal court to deny relief unless it determines that the state court decision was "objectively unreasonable." Parker, 132 S.Ct. at 2152. "A federal court may not overturn a state court decision . . . simply because the federal court disagrees with the state court." Coleman v. Johnson, 132 S.Ct. 2060, 2062 (2012) (per curiam). Even if a federal habeas court concludes that the state court applied federal law

4

incorrectly, it may not grant relief. Williams v. Taylor, 529 U.S. 362, 365 (2000). Rather, the defect in application of law or determination of the facts must rise to the higher level of "unreasonable." In light of these two layers of judicial deference, this Court's inquiry is limited to the determination of whether the state court's application of federal law or determination of the facts was objectively unreasonable.

Generally, this Court reviews the "last reasoned opinion" of the state court. See Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). The last reasoned opinion in the present case was issued by the Superior Court of California on habeas review, but that court did not adjudicate Petitioner's insufficient evidence claim. Ex. 19 (dkt. 8-5) at Ex. Q. Accordingly, while it is the "proper decision to review" regarding Petitioner's ineffective assistance claims, it is not the proper decision with respect to Petitioner's claim that there was insufficient evidence of duress. See Barker v. Fleming, 423 F.3d 1085, 1093 (9th Cir. 2005). The Court therefore must "look through" the Superior Court decision to the California Court of Appeal's decision on direct review, which did adjudicate the merits of Petitioner's insufficient evidence claim. See Ylst v. Nunnemaker, 501 U.S. 797, 806 (1991).[1] Thus, when reviewing Petitioner's insufficient evidence claim, the Court will review the California Court of Appeal's decision to determine whether the court unreasonably applied clearly established federal law or unreasonably determined the facts.

### III. DISCUSSION

#### A. The State Court's Determination That Sufficient Evidence Supported the Jury's Finding of Duress Was Not Objectively Unreasonable

Petitioner contends that his Fourteenth Amendment right to due process was violated because there was insufficient evidence to support the trial court's finding of duress. Pet.

---

[1] The Court is aware of the Ninth Circuit's admonition that "AEDPA generally requires federal courts to review one state decision." Barker v. Fleming, 423 F.3d 1085, 1093 (9th Cir. 2005). But that principle applies where one claim is reviewed by multiple courts. Where a petitioner forwards multiple claims, some of which are adjudicated by one court and other claims adjudicated by another, it is proper to give deference to both state court decisions since each represents the state court system's "last reasoned decision." See Edwards v. Lamarque, 475 F.3d 1121, 1135 (9th Cir. 2007) (en banc) (Fisher, J., dissenting) ("When a state trial court reaches a reasoned conclusion that the appellate court subsequently does not address, traditionally we have treated the trial court's determination as the last reasoned decision.").

5

(dkt. 1) at 1-4.  The Court rejects this argument because the California Court of Appeal's determination that the jury properly found duress was not objectively unreasonable.

The Fourteenth Amendment's Due Process Clause provides that a criminal conviction can stand only "upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [the accused] is charged."  In re Winship, 397 U.S. 358, 364 (1970).  Therefore, a state prisoner who shows that there was insufficient evidence to lead a rational trier of fact to find guilt beyond a reasonable doubt is entitled to federal habeas relief.  See Jackson, 443 U.S. at 321.

Federal habeas review of a state court ruling on sufficiency of the evidence is performed "with explicit reference to the substantive elements of the criminal offense as defined by state law."  Id. at 324 n.16.  After reviewing California's law on duress and the record from trial, the Court concludes that the state court reasonably determined that there was sufficient evidence to support the jury's finding of duress.

In the context of sexual offenses, California defines "duress" to mean "a direct or implied threat of force, violence, danger, hardship, or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to (1) perform an act which otherwise would not have been performed, or (2) acquiesce in an act to which one otherwise would not have submitted."  People v. Leal, 33 Cal. 4th 999, 1004 (2004) (citing People v. Pitmon, 170 Cal. App. 3d 38, 50 (1985)).  The presence of duress cannot be determined by a rote formula; all of the circumstances must be considered.  See, e.g., People v. Cochran, 103 Cal. App. 4th 8, 14 (2002) (upholding a finding of duress where the defendant molested his nine-year-old daughter and videotaped the conduct, even though daughter testified that she was not afraid of defendant).  Of particular relevance are the age of the victim, the relationship of the victim to the defendant, and the disparity in physical size between the victim and the defendant.  Id.  Even absent a verbal threat to harm the victim, an "implied threat" can result from psychological coercion.  Id. at 15.  When the defendant is a family member and the victim is young, the defendant's position of dominance and his continuous exploitation of the victim can create psychological coercion sufficient for a finding of duress.  See People v. Espinoza,

6

95 Cal. App. 4th 1287, 1320 (2002) (citing People v. Schulz, 2 Cal. App. 4th 999, 1005 (1992)).

Relying on People v. Senior, 3 Cal. App. 4th 765 (1992), People v. Cochran, 103 Cal. App. 4th 8 (2002), and People v. Veale, 160 Cal. App. 4th 40 (2008), the Court of Appeal found that there was sufficient evidence to support a finding that Petitioner molested his daughter by duress. Quintana, 2011 WL 2453474 at *3-4. This determination was reasonable, as a rational trier of fact could conclude from the evidence presented that Petitioner's daughter was psychologically coerced into complying with her father's advances. First, Petitioner's daughter was five or six years old when the molestation occurred. Ex. 14 (dkt. 8-2) at 1. Confronted with a nine-year-old victim, the Cochran court noted that "when the victim is as young as this victim and is molested by her father in the family home, in all but the rarest cases duress will be present." Cochran, 103 Cal. App. 4th at 16 n.6. In light of the Cochran decision, it is reasonable to conclude that a six-year-old victim molested by her father was under duress. Second, as the victim's thirty-year-old father, Petitioner possessed not only a significant size advantage, but also a significant position of authority within the family. Children as young as Petitioner's daughter commonly view adults as authority figures. See Pitmon, 170 Cal. App. 3d at 51. This view is amplified when the aggressor is the victim's immediate family member. See People v. Superior Court (Kneip), 219 Cal. App. 3d 235, 239 (1990). It was reasonable, then, for a trier of fact to conclude that Petitioner's daughter felt threatened by her father's advances and complied with them only because she felt she had no other choice. Third, the record contains evidence of threats. In an interview played for the jury, the daughter said that Petitioner told her not to tell her mother because the mother would get mad. Ex. 2 (dkt. 7-3) at 15, Ex. 3 (dkt. 7-5) at 238. Petitioner's daughter stated in that same interview that she refrained from telling her mother about the abuse for a period of time because she was afraid her mother would hit her. Ex. 3 (dkt. 7-4) at 110. During the molestation, Petitioner told his daughter to be quiet so that her uncle would not hear. Ex. 3 (dkt. 7-5) at 155. These admonitions support a finding that Petitioner threatened his daughter and coerced her into complying with his advances. Given these facts,

1  it cannot be said that the jury's finding fell below the threshold of rationality.  The state court
2  agreed, and that determination is entitled to considerable deference under AEDPA.

3  Moreover, Petitioner's argument that any psychological coercion he exercised over his
4  daughter was directed merely at nondisclosure, see Quintana, 2011 WL 2453474 at *4, is not
5  a proper basis for overturning the state court's decision.  The state court determined, relying
6  on People v. Senior, that young victims of child molestation cannot perceive the subtle
7  distinction "between warnings enjoining nondisclosure and noncompliance."  Id. (citing
8  Senior, 3 Cal. App. 4th at 775).  To a child, a warning not to report a molestation reasonably
9  implies that the child should not protest or resist the sexual imposition.  Senior, 3 Cal. App.
10 4th at 775.  It was not unreasonable for the state court to reject this argument.

11 Petitioner also contends that the California Court of Appeal improperly distinguished
12 Espinoza by failing to find evidence of a direct or implied threat.  Trav. (dkt. 11) at 6.  In
13 Espinoza, the defendant was convicted of molesting his twelve-year-old daughter (a special
14 education student) by duress.  Espinoza, 95 Cal. App. 4th at 1292-93.  The California Court
15 of Appeal granted the petitioner habeas relief on the grounds that there was insufficient
16 evidence of duress.  Id. at 1320 ("Defendant did not grab, restrain, or corner [the victim] . . .
17 defendant simply lewdly touched and attempted intercourse with a victim who made no oral
18 or physical response to his acts.").  The state court properly distinguished Espinoza on the
19 grounds that there, the victim was at least twice the age of Petitioner's daughter.  Ex. 14 at 7.
20 The state court also noted that the defendant in Espinoza cried and asked the victim if she
21 still loved him, further suggesting less coercive circumstances than existed here.  Id.  As
22 discussed above, there is no doubt that there was evidence of duress in the present case
23 (based on the victim's age, size, relationship with her father, and the actual evidence of
24 threats).  The Court notes, too, that the Espinoza decision appears inconsistent with a line of
25 California cases finding duress when a young child is victimized by a family member.  See,
26 e.g., Cochran, 103 Cal. App. 4th at 15-16 ("[The] record paints a picture of a small,
27 vulnerable and isolated child who engaged in sex acts only in response to her father's
28 parental and physical authority.  Her compliance was derived from intimidation and the

8

psychological control he exercised over her and was not the result of freely given consent."). Particularly in light of the standard that any doubt must be resolved in favor of upholding the state court decision, the state court's decision to distinguish Espinoza was not erroneous.

Because the California Court of Appeal did not unreasonably apply federal law or unreasonably determine that the jury's determination of guilt was predicated on sufficient evidence, the petition for habeas corpus as to Petitioner's insufficient evidence claim is DENIED.

### B. The State Court's Determination That Petitioner Received Effective Assistance Was Not an Objectively Unreasonable Application of Supreme Court Authority

Petitioner next argues that he received constitutionally defective representation from trial counsel. Pet. at 5-17. Because the state court did not unreasonably apply the Strickland standard, Petitioner is not entitled to habeas relief from this Court.

To prevail on a Sixth Amendment ineffective assistance claim, a petitioner must satisfy the two-pronged Strickland standard. First, the petitioner must establish that counsel's performance was deficient–that is, that the attorney made errors so serious that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland v. Washington, 466 U.S. 668, 697 (1984). Second, the petitioner must show that the deficient performance resulted in prejudice–that is, that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. But the question before this Court is not whether counsel's performance was so deficient as to meet the Strickland standard. That was for the state court to decide. Rather, AEDPA directs this Court to engage in a more nuanced inquiry: whether the state court's application of the Strickland standard was unreasonable. See Harrington, 131 S.Ct. at 785. This inquiry involves "a deference and latitude [to the state court] that are not in operation when the case involves review under the Strickland standard itself." Id. As long as "fairminded jurists could disagree" on the correctness of the state court's decision, a federal habeas court may not grant relief. Id. (citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

9

When reviewing an ineffective assistance claim, a federal habeas court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. In evaluating the reasonableness of counsel's actions, a reviewing court must consider the circumstances at the time of counsel's conduct and cannot "second-guess" counsel's decisions or view them under the "fabled twenty-twenty vision of hindsight." Edwards v. Lamarque, 475 F.3d 1121, 1127 (9th Cir. 2007) (en banc) (internal quotation and citations omitted).

Petitioner identifies four errors allegedly committed by counsel: (1) failure to obtain a psychological examination to show that Petitioner's nature is inconsistent with that of a child molester; (2) failure to interview and present potential defense witnesses; (3) failure to obtain a polygraph examination; and (4) cumulative prejudice.

On habeas review, the Superior Court of California concluded that trial counsel made valid tactical choices and rendered reasonable professional assistance. For the following reasons, that conclusion was neither predicated on an unreasonable determination of the facts nor contrary to clearly established federal law. See id. at 1126 (holding that the reasonableness of counsel's assistance is a question of law, whereas whether counsel's actions were "tactical" is a question of fact).

### 1. Failure to Obtain a Psychological Examination

Petitioner contends that his trial counsel was ineffective because he failed to present a type of expert evidence that the California Supreme Court authorized in People v. Stoll, 49 Cal. 3d 1136 (1989). Pet. at 5-10. The Stoll court held that an expert opinion as to whether defendant's personality fit the "profile" of a child molester could be admitted as character evidence tending to show that the defendant did not commit the crime. Id. at 707-08. Petitioner argues that such evidence is a crucial part of a child molestation defense and that a reasonable attorney would have taken further steps, including seeking funds from the court, to ensure that such an expert was presented. Trav. at 9. Because the state court reasonably concluded that the failure to seek Stoll evidence was a tactical decision by trial counsel "that

1  falls within the wide range of reasonable professional assistance," Petitioner is not entitled to
2  relief on this theory.

3  The United States Supreme Court has never required defense counsel to pursue every
4  nonfrivolous claim or defense. See Knowles v. Mirzayance, 556 U.S. 111, 125 (2009). Nor
5  is expert testimony required in every case. Where the evidence does not warrant it, the
6  failure to call an expert does not amount to ineffective assistance of counsel. See Wilson v.
7  Henry, 185 F.3d 986, 990 (9th Cir. 1999) (a decision not to pursue testimony by a psychiatric
8  expert is not unreasonable when the evidence does not raise the possibility of a strong mental
9  state defense). Stoll evidence, while sometimes helpful, is not strictly necessary for a
10 successful defense in a child molestation case. See Brodit v. Cambra, 350 F.3d 985, 993 (9th
11 Cir. 2003) (upholding a state court decision to defer to trial counsel's choice to not present
12 Stoll evidence in a case that was a "swearing contest" between the defendant and the ten-
13 year-old victim). Given the decision in Brodit, reasonable attorneys could disagree as to
14 whether Stoll evidence should have been introduced in Petitioner's case. Therefore, this
15 Court disagrees that trial counsel's failure to obtain a psychological exam amounted to
16 ineffective assistance.

17 Beyond the failure to present Stoll evidence at trial, Petitioner argues that trial counsel
18 was ineffective for failing to even consider it in his preparation of the defense. Pet. at 7. It is
19 true that an attorney's tactical decisions will not be given deference if they arise out of
20 inattention. Wiggins v. Smith, 539 U.S. 510, 524-25 (2003). Trial counsel stated in a
21 declaration that he did not have a strategic reason for failing to retain a psychologist. Ex. 19
22 (dkt. 8-5) at Ex. O. Petitioner cites this declaration, as well as statements by his attorney
23 before trial that he was unprepared, as proof that trial counsel failed to investigate a crucial
24 defense and thus provided ineffective assistance. Trav. at 9. But if counsel reviews the
25 preliminary facts of the case and reasonably decides to pursue only one of two competing
26 defense theories, he need not investigate the abandoned defense theory further. See Williams
27 v. Woodford, 384 F.3d 567, 611-12 (9th Cir. 2004). From the record, it appears that this is
28 what trial counsel did. After looking into the facts, he decided that a child psychologist, not a

11

psychologist who had examined Petitioner, was "essential" for a case of this nature. Ex. 19 at 20. Moreover, trial counsel's declaration is not determinative. In general, a post hoc belief in his own incompetence runs afoul of the rule of contemporary assessment and is not determinative of counsel's effectiveness. Hendricks v. Calderon, 70 F.3d 1032, 1039 (9th Cir. 1995); Babbitt v. Calderon, 151 F.3d 1170, 1175 (9th Cir. 1998) (finding no ineffective assistance despite "counsel's own admission that, in hindsight, he did not adequately plan or research or investigate").

Moreover, the reasonableness of an attorney's choice regarding which defense to pursue is "influenced by the defendant's own statements or actions." Strickland, 466 U.S. at 691. The Superior Court focused on Petitioner's absence from trial in assessing the reasonableness of trial counsel's actions. Ex. 19 at Ex. Q at 3. It is not that "Quintana's flight [from trial] absolved Munoz of any incompetence." Rather, trial counsel had to take account of Petitioner's absence when choosing, with limited funds and time, which expert to present at trial. According to the Superior Court, in light of Petitioner's absence it was "well within the range of competency" for trial counsel to present an expert on child psychology instead of an expert on Petitioner's personality. Ex. 19 at Ex. Q at 3-4. And as noted by the Superior Court, if trial counsel were to present character evidence at trial, it could have opened the door for the prosecutor to put on bad character evidence, which could have harmed Petitioner's case. Ex. 19 at Ex. Q at 4. This determination by the Superior Court was not unreasonable. Trial counsel had limited time and resources. That another attorney might have approached the case differently does not mean that trial counsel rendered ineffective assistance. See United States v. Mayo, 646 F.2d 369, 375 (9th Cir. 1981). To the contrary, that attorneys would approach the defense differently dictates the outcome under the federal court's standard of review. Brodit, 350 F.3d at 994. Because reasonable minds could differ with the Superior Court's conclusion, this Court must affirm the rejection of Petitioner's claim.

This conclusion renders irrelevant Petitioner's claim that trial counsel was obligated to seek funds from the court to pay for the psychologist. In any event, the trial court stated that

Petitioner had access to funds to pay for such an expert and would have to pay if he wanted one. Ex. 3 (dkt. 7-4) at 23. It would have been futile, given the court's statement, for trial counsel to seek funds from the court to pay for the expert. The failure to take a futile action can never be deficient performance. Rupe v. Wood, 93 F.3d 1434, 1445 (9th Cir. 1996).

Having found that trial counsel was not ineffective, the Superior Court did not elaborate on whether Petitioner was prejudiced by any alleged errors. This was correct because the Strickland standard requires a showing of both incompetence and prejudice; if either one of the elements is not present, relief is unavailable. See Brodit, 350 F.3d at 992. Given that the state court decision did not unreasonably apply federal law or determine the facts, this Court cannot say that Petitioner is entitled to habeas relief on this theory.

### 2. Failure to Interview and Present Potential Defense Witnesses

Petitioner also contends that counsel provided ineffective assistance by failing to present six witnesses who would have testified that Petitioner had no sexual interest in his daughter or any other child. Pet. at 11. These six individuals included Petitioner's brother and sister-in-law, as well as four former housemates. Ex. 19 at Exs. E-J. On habeas review, the state court determined that counsel's failure to interview and present these witnesses was a tactical decision and that Petitioner failed to show that interviewing those witnesses would have resulted in a more favorable outcome. Ex. 19 at Ex. Q at 3-4. Because this determination was not objectively unreasonable, Petitioner is not entitled to relief.

Petitioner argues that trial counsel failed to conduct a minimally reasonable investigation into the usefulness of the six witnesses. Trav. at 13. Because counsel's tactical decisions are only entitled to deference if based on reasonable investigation, Petitioner argues that the state court erred in finding that trial counsel's decision was tactical. Id. (quoting Strickland, 466 U.S. at 690-91). A defense attorney has a duty to either make reasonable investigations or make a reasonable decision that investigation is unnecessary. See Strickland, 466 U.S. at 691; Hinton v. Alabama, 134 S.Ct. 1081, 1088 (2014) (per curiam). But the duty to investigate and prepare a defense does not require that every possible witness be interviewed. Hendricks, 70 F.3d at 1040.

13

      Here, trial counsel conducted some investigation into the six witnesses by speaking with at least one of them, Petitioner's brother Edgar Duran, before trial. Ex. 19 at Ex. 3 at ¶ 9. The state court found that trial counsel's failure to pursue the witness any further was a valid tactical decision. According to the state court, the decision could have been based in trial counsel's determination that such evidence would be cumulative of cross-examination testimony or that it would open the door for the prosecution to present bad character evidence. Ex. 19 at Ex. Q at 4. Petitioner counters that pretrial motions show that the prosecution did not have any bad character evidence. Trav. at 13. But even if prosecution lacked bad character evidence, trial counsel could still make a tactical decision based on that assumption. Before trial or any pretrial motions, it is reasonable for a defense attorney to take actions that shield his client from the presentation of any potentially damaging character evidence at trial. The state court's determination that this decision was tactical is entitled to deference by this Court. See Lamarque, 475 F.3d at 1126.

      Even if Petitioner were able to show that the decision was not tactical, he cannot show a reasonable probability that the outcome of the case would have been different with the additional witness testimony. Trial counsel's strategy was to challenge the victim's testimony–to show that the victim could not remember things accurately and that her mother, jealous of Petitioner's interactions with other women, might have encouraged the daughter to fabricate the allegations. Ex. 3 at 417-23, 85-87. Trial counsel's cross-examination and presentation of an expert in child memory served these goals. Id. It is unclear in hindsight whether the testimony of two family members and four personal acquaintances would have compelled the jury to reach a different result. While it is possible that the jury would have reached a different outcome, it is not a "reasonable probability," given that the jury took less than a day of deliberation before returning a guilty verdict. Ex. 1 at 142, 212. "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." Strickler v. Greene, 527 U.S. 263, 289 (1999) (quoting Kyles v. Whitley, 514 U.S. 419, 434 (1995)). The state court made a reasoned

14

1  determination that trial counsel's defense was sufficient to support a fair trial.  That there is a
2  possibility that a juror would have had a reasonable doubt does not compel this Court to
3  overturn the state court's determination.  Therefore, this Court does not agree that counsel's
4  failure to interview and present the six witnesses constituted ineffective assistance.

### 3. Failure to Obtain a Polygraph Examination

Petitioner further contends that his attorney rendered ineffective assistance by failing to have him take a polygraph test, which might have convinced the prosecution to dismiss the case before trial. Pet. at 15-17.  The state court's rejection of this claim was not an unreasonable application of clearly established federal law, so Petitioner is not entitled to relief on this theory.

Supported by the declarations of two criminal defense attorneys, Petitioner claims that polygraph examinations are a "key factor" in negotiations with the district attorney's office. Trav. at 16.  Because it ignored this evidence of the "practice and expectations of the legal community" in California, Petitioner argues that the state court wrongfully failed to assess reasonableness under prevailing professional norms. Id. at 15-16 (citing Padilla v. Kentucky, 559 U.S. 356, 366 (2010)).  While courts evaluate reasonableness in part by looking to prevailing professional norms, Petitioner has not shown as a matter of clearly established federal law that polygraph examinations are the prevailing norm.

The Supreme Court has not precisely defined the duties and responsibilities of defense counsel in the pretrial settlement or plea bargaining process.  This makes sense because plea bargaining involves the practice of negotiation, and negotiation is a nuanced art "defined to a substantial degree by personal style." Missouri v. Frye, 132 S.Ct. 1399, 1408 (2012).  "The alternative courses and tactics in negotiation are so individual that it may be neither prudent nor practicable to try to elaborate or define detailed standards for the proper discharge of defense counsel's participation in the process." Id.

While the declarations Petitioner offers show that some attorneys would have sought a polygraph exam, they are insufficient to grant relief under this Court's deferential standard of review.  California does not admit polygraph exam results in evidence, and the Santa Clara

15

1 County District Attorney's office has a policy of not giving substantial credence to polygraph
2 results. Cal. Evid. Code § 351.1; Ex. 19 at Ex. Q at 4. Given these restrictions, this Court
3 does not find that trial counsel's failure to use polygraph results in plea negotiations was
4 unreasonable. Petitioner does not refer to any evidence that the Santa Clara County District
5 Attorney's office has dismissed a molestation case on the results of a polygraph examination.
6 It is not an unreasonable application of federal law for a state court to decline to apply a legal
7 rule that has not been established by the Supreme Court. Richter, 131 S.Ct. at 786.
8 Therefore, this Court cannot say that the state court unreasonably applied a federal law.

9 Further, the state court determined that presenting polygraph evidence would not have
10 made a difference in the outcome of the trial. This Court cannot find that determination
11 clearly contrary to established federal law, given that the Supreme Court has recognized the
12 dubious reliability of polygraph results. See United States v. Scheffer, 523 U.S. 303, 307-08
13 (1998).

14 The Court thus disagrees that the failure to obtain a polygraph examination constituted
15 ineffective assistance of counsel.

16 Because Petitioner cannot establish that the state court unreasonably applied the
17 Strickland standard on any of the alleged errors, the petition for habeas corpus as to his
18 ineffective assistance of counsel claims is DENIED.

### 4. Cumulative Prejudice

20 Petitioner's final argument is that cumulative prejudice requires reversal of the state
21 court's decision. Although the state court did not explicitly consider this argument, it
22 implicitly determined that there was no cumulative error. Ex. 19 at Ex. Q at 3-4. Because
23 that decision was not an unreasonable application of Supreme Court authority, Petitioner is
24 not entitled to relief on this theory.

25 The cumulative effect of trial errors may result in a deprivation of due process.
26 Chambers v. Mississippi, 410 U.S. 284, 298 (1973). But where there is no single
27 constitutional error existing, nothing can accumulate to the level of a constitutional violation.
28 See Hayes v. Ayers, 632 F.3d 500, 524 (9th Cir. 2011). Because the state court reasonably

16

determined that none of the alleged errors rose to the level of a constitutional violation, no cumulative error occurred either.  Therefore, the petition for habeas corpus as to Petitioner's cumulative prejudice claim is DENIED.

**IV.   CONCLUSION**

The state court's conclusions that (1) there was sufficient evidence to support duress and (2) Petitioner's trial counsel was not ineffective were not contrary to clearly established Federal law or predicated on an unreasonable determination of the facts.  Accordingly, the petition for a writ of habeas corpus is DENIED.

**IT IS SO ORDERED.**

Dated: September 19, 2014

CHARLES  R. BREYER
UNITED STATES DISTRICT JUDGE